UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LINDSEY SHEPARD

PAUL JONES

Plaintiff                         Civil Action No. 1:14-cv-10301-RGS

       V.

DOUGLAS K. HOWARTH

ANTHONY SCANZANI

CITY LINE AUTO SALES

FREDRICK J.HANNA

Defendants

## SECOND AMENDED COMPLAINT

### Parties

1. The Plaintiff Lindsey Shepard is a resident of Braintree, County of Norfolk, Massachusetts and a citizen of the United States.

2. The Plaintiff Paul Jones is a resident of Stoughton, County of Norfolk, Massachusetts and a citizen of the United States.

3. Defendant Douglas K. Howarth is a natural person doing business in New Hampshire and Massachusetts as City Line Auto Sales at 562 Fitchburg Road, Greenville New Hampshire and a US Citizen.

4. Defendant Anthony Scanzani is a natural person doing business in New Hampshire & Massachusetts

as City Line Auto Sales at 562 Fitchburg Road, Greenville New

5. Hampshire and a US Citizen.

6.   Defendant City Line Auto Sales is a company located at 562 Fitchburg Road, Greenville New

Hampshire and advertises in Massachusetts to sell used automobiles.

7. Defendant Fredrick J. Hanna is a third party debt collect and debt buyer with a usually address of

2253 Northwest Parkway Marietta GA 30067.

## Jurisdiction

8.   This court has jurisdiction over this matter because plaintiffs and defendants are in two different

states.

9.   This court has jurisdiction over this matter because defendants (City Line Auto Sales, Anthony &

Doug) advertised in Massachusetts and Plaintiffs started the negotiations in Massachusetts and a deal

was put together while defendant was in New Hampshire and the Plaintiff was in Massachusetts.

10. This court has jurisdiction over this matter Defendant Fredrick J. Hanna (hereafter FJH) reached into

Massachusetts and violated several Federal & State laws and defendant Fredrick J. Hanna conducts

business in Massachusetts.

11. Jurisdiction of this Court arises pursuant to 47 U.S.C. § 227 et Seq.

## Facts

12. All conditions precedent to the bringing of this action has been performed by plaintiffs Paul Jones

(hereafter PJ) & Lindsey Shepard (hereafter LS).

13. At all times relevant, Plaintiffs PJ & LS were each a consumer defined under the MDCRA, TCPA,

MGL 93a.

14. At all times relevant defendant FJH is a debt collector defined under the MDCRA,MGL 93a.

15. Defendant FJH has a past of ongoing campaign of willfully and knowingly violating the Federal and State laws, and seem intent on violating the plaintiff's (PJ & LS) rights repeatedly after they have receive Cease & Desist demand letters by certified return receipts.

16. Defendant FJH violated the MGL 93a when the failed to Cease all calls when they received plaintiffs PJ & LS Cease & Desist letters by certified mail on December 24, 2012 (See Exhibit 2) and it was signed by their employee K. Jackson.

17. At all times relevant, the Car Dealer did business as City Line Auto Sales and was and is a corporation and or business and is in the business of selling motor vehicles to Massachusetts residents all within the jurisdiction of this Court.

18. The Plaintiffs has standing and capacity to file the suit and all the defendants are being sued in the correct capacity.

19. Defendants (City Line Auto Sales, Anthony & Doug) made the aforesaid representations, knowing the same to be false or with reckless disregard as to whether they were true or false or, alternatively, innocently but with the intent that Plaintiffs rely on same, for the purpose of inducing Plaintiffs to purchase the subject motor vehicle (2006 Mercedes CLK) for the agreed upon purchase price.

20. Defendants (Doug & Anthony) are Car Dealers and defendant City Line Auto Sales hereafter Dealer is a motor vehicle dealer obligated to deal with Plaintiffs in good faith.

21. This cause arises out of Defendants' (City Line Auto Sales, Anthony & Doug) breaches of contract, misrepresentation and violations of statutes as hereinafter alleged.

22. Plaintiffs PJ & LS, unaware of the true facts of the matter and then reasonably relying upon Defendants' Doug & Anthony here after Dealers representations as aforesaid, purchased the motor vehicle from Defendants Dealer for the aforesaid price, to Plaintiff's detriment as hereinafter alleged.

23. As a result of Defendants' Doug, Anthony and City Line Auto Sales aforesaid wrongful conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to, the loss of the benefit of his bargain, Money, embarrassment, humiliation, mental distress and anxiety, together with the additional damages hereinafter set forth.

24. The Defendant (City Line Auto Sales, Anthony & Doug) Dealer's acts and omissions of representation and concealment were material to the transaction.

25. The Defendant (City Line Auto Sales, Anthony & Doug) Dealer's acts and omissions of representation and concealment were made with the intent of misleading Plaintiffs into relying upon it.

26. The Defendant (City Line Auto Sales, Anthony & Doug) Dealer's acts and omissions of representation and concealment were made with the fraudulent intent of inducing Plaintiffs to enter into a written contract to purchase the motor vehicle, which it did.

27. The Plaintiffs PJ & LS were justified in relying on the representation and the lack of any concealment by the Defendant (City Line Auto Sales, Anthony & Doug) Dealers and did, in fact, so rely.

28. As a result of the above, the Defendants (City Line Auto Sales, Anthony & Doug) committed one or more acts of Common Law Fraud upon Plaintiffs and that was unfair to Plaintiffs.

29. Defendants Doug stated to the plaintiffs upon meeting her that he was the owner of City Line Auto sales.

30. Defendant Anthony stated to the plaintiffs that he was co owner of City Line Auto Sales.

31. Defendant Doug and Anthony are in the business of selling used motor vehicles to members of the public.

32. Defendant City Line Auto Sales is a company that sell used automobile to members of the public.

33. Defendant City line Auto Sales is a business that sells automobiles in New Hampshire and advertises in Massachusetts and New England and online throughout the United States.

34. Plaintiff PJ purchased an Auto Hunter Magazine in Stoughton Massachusetts in January of 2008 and seen the 2006 Mercedes CLK automobile advertised by defendants (City Line Auto Sales, Anthony & Doug) in the magazine.

35. On or about January 25, 2008 plaintiffs PJ & LS called defendant Doug at City Lines Auto Sales and stated that she wanted to purchase a car and that her boy friend Plaintiff Paul Jones had purchased a 2003 Lincoln from Doug in the past and was satisfied.

36. Defendant Doug told plaintiff that the car she was inquiring about was a 2006 blue 350 CLK 2 door Mercedes and that it had been in a fresh water flood and was in good shape and only needed 2 computers and all the fluids in the engine changed and the car would run perfectly and it was still available for sale.

37. The defendant Doug stated to the plaintiffs on the telephone (Speaker phone) that he would let the plaintiff purchase the vehicle for the sum of $14,420.00. If they the plaintiff came the following day plaintiffs agreed and made an appointment to go look at the vehicle.

38. Defendant Doug & City Line Auto Sales had sold plaintiff Paul Jones a 2003 Lincoln Mark in the past and when plaintiff inquired about the car defendant Doug told him exactly what was wrong with the car (Bad Engine) and plaintiff got it fixed and owned the car for over 5 years.

39. On or about February 2008 the parties PJ, LS, Doug, Antony & City Line Auto Sales entered into a consumer transaction that Plaintiffs agreed to purchase a certain motor vehicle from the defendants Doug, Anthony & City Line Auto Sales and the defendants Doug, Anthony agreed to sell that vehicle to Plaintiffs, and as part of the deal the Dealer (City Line Auto Sales, Anthony & Doug) agreed to supply the parts to fix said vehicle with the purchase.

40. As part of the deal, the Dealer (City Line Auto Sales, Anthony & Doug) made representations to Plaintiffs and Plaintiffs relied upon the truthfulness of all said representations.

41. As part of the deal, the Defendants Doug & Anthony represented to Plaintiffs, and Plaintiffs relied on said representation, that the vehicle "only needed 2 computers and all the fluids changed" That representation was important to Plaintiffs in deciding to acquire the vehicle, but not written into the sales documents, contrary to the requirements of the law.

42. Defendant Doug stated "that the job to fix the 2006 Mercedes was easy and that he could have a shop down the road fix it" once the plaintiffs paid in full for the vehicle.

43. Defendant Doug stated that the shop down the street where the Mercedes was to be towed has been working with defendants Doug and City Line Auto Sales for years and was very trust worthy, Plaintiffs relied on said representation and believed what defendant told them regarding the 2006 Mercedes.

44. Defendant Doug mislead the plaintiffs about what the 2006 CLK Mercedes in fact the engine was ceased (needed an Engine).

45. Defendant Doug told plaintiffs to "come up to New Hampshire and take a look at the 2006 Mercedes" Defendant Doug stated that "your boy friend Paul Jones know where City line Auto Sales is located".

46. Defendant Doug set up an appointment to meet with the plaintiffs to show them the 2006 Mercedes on or about January 25, 2008.

47. Plaintiffs PJ & LS drove to New Hampshire and upon arrival walked into the office and met defendant Anthony.

48. Plaintiffs PJ & LS asked for Doug and stated that plaintiffs was here to look at a 2006 Mercedes CLK, and that defendant Doug had made an appointment with plaintiffs PJ & LS for 2pm to look at the vehicle, Defendant Anthony stated that Doug would be right out to speak with plaintiff.

49. Defendant Doug came out of office to the waiting room where the plaintiffs PJ & LS were seated waiting for the defendant Doug who had a meeting with plaintiffs.

50. Defendant Doug came out & greeted plaintiffs PJ & LS and said to them that "the 2006 Mercedes Clk was in a fresh water flood and the computers where damaged by the water and that the computers were located under the seats of the vehicle and that all this car needed was 2 computers which he had and would sell with the car, and all the fluids changed and a good vacuum the car would be back to normal" Plaintiffs PJ & LS relied on said representation.

51. Defendant Doug told defendant Anthony to show us the car which was located in the lot of City Line Auto sales located at 562 Fitchburg Road, Greenville New Hampshire defendant Anthony did so.

52. Defendant Anthony showed the 2006 Mercedes CLK to plaintiffs PJ & LS and stated the same as defendant Doug stated "that the car was in a fresh water flood and that it could not be started until the computers and all the fluids was changed and that defendant Doug had the computers that was needed and would sell them with the car" Plaintiffs PJ & LS relied on said representation.

53. Plaintiff LS ask if she could get a written warranty stating that the car only needed 2 computers and all the fluids changed, defendant Anthony stated that he would give it to the plaintiffs PJ & LS once the car was paid in full Plaintiffs PJ & LS relied on said representation.

54. Defendant Anthony and plaintiffs PJ & LS returned to office and plaintiffs ask defendant Anthony if they could put a deposit on the car now and come back in a few days to finish paying for the vehicle defendant Anthony consulted with defendant Doug and the defendants agreed to allow plaintiffs PJ & LS to put deposit down on the vehicle (2006 CLK Mercedes) and to pay balance in the near future.

55. Plaintiffs PJ & LS agreed to purchase the vehicle from defendants Doug, Anthony and City Line, Plaintiff PJ made a deposit with his corporate debit card.

56. Plaintiffs PJ & LS informed the defendants Doug & Anthony that the car would be in the name of Lindsey Shepard and that the plaintiffs would put a deposit of $6500 by credit cards and finish paying in a few days defendants Doug and Anthony agreed.

57. At the time the plaintiffs PJ & LS gave the deposit, defendant Anthony stated to the plaintiffs that "Lindsey would have to sign all paper work in order for them to hold the vehicle and upon final payment the plaintiff and defendant would sit down in office in fill in all the blanks on the contracts" so the plaintiff Lindsey Shepard signed all paper work under Lindsey Shepard name only, Plaintiffs PJ & LS relied on said representation.

58. Defendants Doug & Anthony knew or should have known that the prior damage and repairs to the 2006 Mercedes CLK existed and that those facts would be important to Plaintiffs PJ & LS in making their decision to acquire the vehicle and that the truth of the

vehicle (Ceased Engine) had been disclosed to Plaintiffs PJ & LS it would have not been purchased but defendants Anthony & Doug did not do so.

59. Defendants Anthony & Doug knew or should have known that the information and truth which it withheld from Plaintiffs PJ & LS about the vehicles engine being ceased was something that the Plaintiffs PJ & LS would want to know and was material to the transaction.

60. As a result of the above facts, Defendants Anthony & Doug represented to Plaintiffs PJ & LS that the subject of a consumer transaction had benefits that it did not have and representing that the subject vehicle was a particular standard, quality, or grade that it was not.

61. The plaintiffs PJ & LS called in the final payments over the phone with several credit cards to the defendants Doug and Anthony we were on a speaker phone and final payments were received by defendants Doug, Anthony and City Line Auto Sales.

62. At that time the defendant Anthony informed us that he would have the car towed to Eric's Auto shop to have computers installed and fluids changed and that we could come in and finish filling out paper work we agreed Plaintiffs PJ & LS relied on said representation.

63. The defendants Doug, Anthony and City Line Auto Sales had the car towed to Eric's Auto Shop a few miles from City Line Auto Sales after plaintiff's final payment without the computers parts that the defendant Doug & Anthony promised would be sold with the car Plaintiffs PJ & LS relied upon defendants Doug & Anthony statements.

64. The owner of Eric's auto shop called the plaintiffs PJ & LS 2 days later and informed us that the vehicle that we had purchased from the defendants Doug, Anthony and City Line Auto Sales had a hole in the engine block and that the defendants Doug, Anthony & City Line Auto Sales were aware of it and that the car needed a complete engine that would cost between $11,000 and $15,000.

65. Plaintiff Paul Jones called City Line Auto Sales and defendant Anthony stated to plaintiff Paul Jones that if that is the case that the engine is ceased he would need to speak with defendant Doug and he would get back to us.

66. Defendants never returned plaintiffs call, that day the next day plaintiff Paul Jones called City Line Auto Sales defendant Anthony answered plaintiff PJ asked to speak with defendant Doug and was always told Doug was unavailable.

67. Plaintiff informed Anthony that they were suppose to come and finish paper work and demanded a time to come and do so at that time defendant Anthony informed the plaintiff Paul Jones that he had already finished all the paper work.

68. Defendant Anthony stated to plaintiff PJ the paper work was with the car at Eric Mechanics Shop, plaintiff PJ stated that he and plaintiff Lindsey Shepard was on their way to City Line Auto Sales to speak with defendants Anthony & Doug and to confirm the paper work for the 2006 Mercedes that was never finished by the plaintiff Lindsey Shepard was actually in the car at Eric's Mechanic shop.

69. When plaintiffs PJ & LS arrived at City Line Auto Sales defendant Anthony stated that "We have no more business with you (Paul Jones & Lindsey Shepard) and that Doug was not going to meet with us at all and to get off the property and that the finished paper work (For the 2006 Mercedes) was in the car at Eric's shop.

70. At that time plaintiffs PJ & LS left City Line Auto Sales and went to Eric's shop where they were told by Eric (The Owner of Mechanic Shop) that the defendants Doug & Anthony have several open cases in court for misleading their customers, over 30-40 cases in the last few years.

71. Plaintiff Paul Jones went in car and retrieved the paper work for the purchase of the 2006 Mercedes Benz and realized that City Lines Auto Sales, Doug and Anthony had added another owner of the car (Absoloot Enterprises) to the paper work which was plaintiff Paul Jones Company, plaintiff did not authorize defendants to sign his company's name to car contract plaintiff only used the company card to put the initial deposit on the 2006 Mercedes.

72. The Defendants (Doug, Anthony) also forged Lindsey Shepard and Absoloots name to all the car documents, where plaintiff Lindsey Shepard had signed her name.

73. The plaintiffs PJ & LS called there credit card companies and was informed in order to have a dispute we would have to return the merchandise back (car) to the defendants Doug & Anthony's car dealership so plaintiffs did as credit card company requested.

74. Plaintiff Credit Card Company informed plaintiffs to return the defective merchandise and so we did at once within 72 hours of the delivery to Eric's auto shop, the car was back at City Line Auto Sales 562 Fitchburg Road, Greenville New Hampshire.

75. The Plaintiff called a tow truck and loaded the car up from Eric's mechanic shop and followed the tow truck driver to 562 Fitchburg Road, Greenville New Hampshire City Line Auto Sale and gave the car and original paper work back to Defendants Anthony & Doug when they both were at the front desk.

76. Defendant Doug came out and inspected the car, at that time the plaintiff Paul Jones informed him that we had informed the credit card companies of what happened and we were told to bring the car back and the credit card company was going to reverse the charges.

77. The Defendant Doug and Anthony took the car and ask for all paper work and we the plaintiffs PJ & LS gave them the original title and all the paper work to the car and kept copies that we had made.

78. The next day the plaintiffs got a call from the credit card companies and was informed that half the money was returned and to expect the other half to be returned in the next few days.

79. The Defendants Anthony & Doug wrote a letter to the credit card companies and stated that the plaintiffs Lindsey Shepard & Paul Jones has committed fraud by stating they had returned the car (Merchandise) when in fact they did not return the car.

80. The credit card companies reversed all moneys and the defendants kept the money and the car and refused to speak to the plaintiff and or the plaintiff's attorney on several occasions.

81. The plaintiffs LS was contacted by the credit card company and was told that they had given the money back to the defendants Doug, Anthony & City Line Auto Sales.

82. The plaintiffs PJ & LS called the defendants Anthony & Doug but the defendants refused to accept the plaintiffs call.

83. The plaintiffs PJ & LS hired an attorney John Mascardelli to resolve this matter.

84. John Mascardelli called and spoke with defendant Doug once and defendant Doug stated to attorney John Mascardelli that this matter is in the hands of my attorney now.

85. Defendant Doug stated he could not discuss the case and would give the contact information of his attorney to attorney John Mascardelli and instructed attorney Mascardelli to call him the following day so he could give attorney Mascardelli his attorneys contact information.

86. Attorney Mascardelli tried to contact defendant Doug to get the contact information Doug promised he would give attorney Mascardelli the following day but defendant refused to take anymore of attorney Mascardelli phone call.

87. Attorney John Mascardelli wrote the defendant Doug a letter it stated that he has called several time to City Line Auto Sales to speak with Doug to get his attorneys contact information but was always told defendant Doug was not available and to please contact him so he could get defendants Doug's attorneys contact information (Exhibit 11).

88. Defendant Doug & Anthony started advertising the 2006 Mercedes for sale in the March 1, 2008 Auto Hunter magazine while the dispute was still going on with plaintiffs (See Exhibit 11 Auto Hunter).

89. Plaintiff tried unsuccessfully several time to communicate with the defendants by Fed X, US Postal Service and Defendants refused to correspond with plaintiffs (See Exhibit 11 Fed X & USPS confirmations)

90. The plaintiffs PJ & LS sent a Massachusetts 93A Demand Letter to the defendants City Line Auto Sales and Anthony and it was received on August 27, 2008 (See Exhibit 11 USPS Tracking).

91. The plaintiffs PJ & LS tried to contact the Defendants City Line, Doug & Anthony but the defendants and refused to accept plaintiff's calls & mail.

92. The plaintiffs called the attorney but attorney was not available and plaintiffs were told that the attorney would call them back but no return phone call was ever made by defendant's attorneys.

93. The plaintiffs PJ & LS have sent several letters to the defendant but the defendants refuse to accept any letters or telephone calls from the plaintiffs.

94. The plaintiff Paul Jones got through to defendant Anthony a few months after the demand letter was answered and plaintiff Paul Jones informed defendant Anthony that he wanted to work this out and defendant Anthony stated that the plaintiffs PJ & LS would have to take them to court and that it's a waste of time to even write any letters or to call the business (City Line ) because the defendants Doug & Anthony will not ever speak a word to the plaintiffs and that we should take it as a loss or take them to court.

95. Defendant Anthony also stated that the car would be resold and the defendants are keeping all proceeds for their time and trouble.

96. Plaintiffs were unaware how to hold defendants accountable for their actions and did not have funds to move forward with a lawsuit at the time.

97. Plaintiffs are aware of at least 30-40 complaints that are similar and defendants Doug, Anthony have done the same exact thing to several of their customers.

98. Defendants City Line Auto Sales, Doug & Anthony have a history of hiding the facts (Misrepresenting vehicles) about cars that they sell to the public and have had at least 30-40 ongoing complaints filed in the last 5-7 years, they are repeat offenders.

99. The acts alleged herein against Defendants City Line Auto Sales, Doug & Anthony all took place in Norfolk County (Massachusetts) and Greenville New Hampshire in that the offending calls & actions were done in Stoughton, Massachusetts & Greenville New Hampshire.

100. Plaintiffs PJ & LS have no prior or present established relationship with Defendant FJH to make any phone calls to plaintiff's cell, home, job, business and or relative's telephone numbers.

101. Plaintiffs PJ & LS have never given defendant FJH or the original creditor express permission to call Plaintiff's cellular, Home, relatives and or wireless numbers.

102. Plaintiff Lindsey Shepard did not even have the telephone Cell numbers 781-318-7076,617-799-8615, 617-304-5185, 617-799-9237, 781, 781-603-7743, 781-436-5038 , 914-573-6002, 617-756-9682 defendant FJH used Skip tracing devices to obtain the above numbers.

103. Plaintiffs PJ & LS have no contractual obligation to pay Defendant FJH.

104. Plaintiff answered, at least 25 additional calls from Defendant FJH where their caller id showed a number "unknown," and or Blocked, when plaintiff answered there was a 3-5 second delay where defendant FJH representative did not identified itself and refused to say who they which is another violation of the TCPA, MDCRA & mgl 93a.

105. Only after answering the caller ID blocked or unknown calls did Plaintiffs PJ & LS realize it was defendant FJH calling.

106. After receipt of the first prohibited call, Plaintiffs made several attempts to demand defendant FJH to cease and desist all calls.

107. At no time did Plaintiffs PJ & LS provide prior express permission for anyone to call their wireless number using equipment that has the capacity to store or produce random or sequential telephone numbers and / or with the use of a predictive dialer or skip tracing devices.

108. Despite the Cease & Desist letters and Verbal communication from Plaintiffs PJ & LS not to call their cell and or wireless numbers , defendant FJH continued to place prohibited calls to Plaintiff's PJ & LS assigned cell & wireless numbers.

109. Plaintiff seeks damages for any and all calls that defendant FJH made to Plaintiff's PJ & LS cell & wireless telephone number in violation of the TCPA and the rules, regulations and orders promulgated by the FCC including but not limited to damages for any calls that defendant FJH made which Plaintiffs PJ & LS are unaware of, for Defendant's FJH failure to provide a copy of its do-not-call policy, failure to properly scrub the national DNC as required by the FCC, failure to properly maintain and update its company specific DNC call list, and failure to accommodate Plaintiff's PJ & LS requests to stop calling (Cease & Desist Demand Letters) , failure to train and monitor its employees about the existence of both the national and state required  lists and to enforce the requirement that DNC requests be recorded, failure to stop all calls to the subscriber made within 10 years of consumer request to place their numbers on company DNC, failure to employ a version of the national "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and to maintain records documenting this process, failure to sufficiently identify individual debt collectors name, his or her employer caller and business entity on whose behalf the calls were being made, or the causing Defendant's FJH telephone numbers to be blocked from the subscriber's caller ID.

110. **Plaintiff LS sent defendant Fredrick J. Hanna a Cease & Desist letter, a validation of debt and a copy of a lawsuit that would be filed by certified receipt # 7011 3500 0000 0789 6089 On**

August 8, 2012 plaintiff paid $5.75 to send (Exhibit 3) and it was received by defendant FJH on August 11, 2012 along with a Validation of debt defendant violated the Cease & Desist order soon after they received it.

111. Plaintiff LS sent defendant FJH a Notices of Pending Lawsuits an notice of none permissible purpose of pulling her credit reports without a permissible purpose on or about September 1, 2012 by certified receipt # 7011 3500 0000 0789 5693 also Fredrick J. Hanna's correspondence is attached (Exhibit 6) and another Cease & Desist order defendant FJH violated the Cease & Desist order soon after they received it.

112. Plaintiff PJ sent Fredrick j Hanna a Cease & Desist letter and a Notice of Pending Lawsuit (Exhibit 2) on December 18, 2012 by Certified Return Green Receipt # 7011 3500 0000 0691 7570 and it was received by defendant FJH and signed for by their employee K. Jackson on December 24, 2012 violated the Cease & Desist order soon after they received it.

113. Plaintiff PJ also sent a Notice of Pending Lawsuit on or about February 13, 2013 and it was received by the defendant on Feb 19, 2013 at 1:40 pm by certified mail (Exhibit 4).

114. Plaintiff PJ faxed defendant FJH a Notice of Pending lawsuit and a list of TCPA violations on May 3, 2013 a fax transmission report is attached as proof they received it (Exhibit 5).

115. Plaintiff PJ & LS sent Fredrick j Hanna each a MGL 93a demand letter on April 1, 2013 by certified return Green receipt # 7011 3500 0000 0848 0867 and it was received by defendant FJH on April 5, 2013 and signed for by S. Garvia (Exhibit 1) and defendants never answer it.

116. Plaintiff also mailed Cease & Desist demand letters to defendant FJH on or about January 5, 2011 and March 7, 2011 defendant ignored the letter so plaintiff started to mail out Cease &

**Desist letters by Certified Return receipts to prove that defendant FJH received them and refused to acknowledge them.**

117. Defendant FJH was well aware that a Cease & Desist order (And a verbal warning on several occasions not to call any of plaintiffs PJ & LS Cell, Wireless , Home, Business and or Relatives telephone numbers defendant FJH refused to follow the TCPA,MDCRA & the MGL 93a laws plaintiffs ask for $1500 per call and triple damages from the MGL 93a law.

118. Defendant FJH ignored all request to Cease & Desist verbally and that were sent from plaintiffs PJ & LS which is a violation of the TCPA, FDCPA, MDCRA and mgl 93a.

119. As one can see the plaintiffs PJ & LS have been trying for years to get the Defendant FJH to stop violating the TCPA , Cease & Desist Demand Letters and Federal State laws by communicating with them through the United State Postal Service , email , telephone and fax nothing has stop them from violating the TCPA, FDCPA, MDCRA & THE MGL 93A.

120. The Federal Debt Collection Practices Act (hereafter FDCPA) has passed the one year statute of limitation and plaintiff is not suing under the FDCPA.

121. The defendant Fredrick J Hanna has violated the Telephone Consumer Practices Act(TCPA) Sec. 227., 47 USC § 227(b)(1)(A)(iii) and 47 U.S.C. §227(b)(2)(5), Defendant FJH has violated the Massachusetts Debt Collection Regulation Act, 940 CMR 7.00 and the Massachusetts Unfair & Deceptive Trade Practices Act. MGL 93a, Plaintiff PJ & LS contends that the Defendant FJH has violated such laws by repeatedly harassing Plaintiff PJ & LS in attempts to collect alleged but nonexistent debt.

122. On or about December of 2010, Plaintiff Paul Jones & Lindsey Shepard began receiving calls to their cell, wireless, home, business and relatives numbers from Defendant Fredrick J. Hanna without plaintiff prior express permission or for emergency purposes.

123. On October 10, 2010 at 10:15 am defendant FJH called plaintiff PJ wireless number 781-344-4352 (Exhibit 7 page 4) and asked for Lindsey Shepard without plaintiff prior express permission or for emergency purposes.

124. Defendant FJH made all calls o plaintiffs PJ & LS without plaintiff prior express permission or for emergency purposes.

125. Plaintiff PJ informed defendant FJH that this is not her number, and Lindsey Sheppard does not have authorization to receive calls on his numbers.

126. Plaintiff PJ also told defendant FJH not call his numbers back and to remove it from their call list, defendant FJH representative stated they would remove all plaintiffs PJ numbers from their call log, but failed to do so, plaintiff clearly withdrew any express permission that defendant FJH thought they had with him on or about October 10, 2010 at 10:15am.

127. Defendant FJH call plaintiff LS parents on several occasion and informed them that plaintiff LS owes a debt to the defendant FJH, and that she should learn how to pay her debt, and that if she doesn't pay the sheriff will be looking for her with a default judgment and she LS can face jail time which is a violation of MDCRA and the mgl 93a.

128. Defendant Fredrick J. Hanna called plaintiff LS job on several occasions and stated that if she did not make arrangements to pay her debt with defendant FJH she could face jail time.

129. Defendants FJH was told that they do not have authorization to call LS job because she cannot receive call here and to not call back Fredrick J. Hanna called over 35 more times after they were warned which is a violation of the TCPA, MDCRA and the mgl 93a.

130. Plaintiff PJ was employing Lindsey Shepard and telephone number 800-280-1488,617-304-5185,781-318-7076,781-436-5038, 413-328-2070 was at the time Lindsey Shepard work numbers she was employed at the time defendant FJH was calling non-stop to her job.

131. Plaintiffs PJ & LS request $1500 per call, for any calls made after defendant FJH received a Cease & Desist letter and or a verbal message not to call any of plaintiffs PJ & LS *numbers as of October 10, 2010 at 10:15am.*

132. *Plaintiffs sent Cease & Desist letter U.S.P.S by certified green return receipt # 7011 3500 0000 0691 7570 and it was received on 12/24/12 and signed by defendant FJH employee name K. Jackson (Exhibit 2 pg 3) and defendants FJH received a verbal warning not to call any of plaintiffs business, cell, home and or relatives telephone numbers on October 10, 2010 at 10:15am.*

133. *Plaintiff Paul Jones was charged overages for each month defendant FJH refused to stop calling his wireless telephone numbers which he only at the time had 5000 minutes per month see invoices* **(Exhibit 8)**.

134. *Plaintiff Paul Jones paid $50 - $450 in overages each month defendant FJH refused to stop calling his telephone numbers (Exhibit 8).*

135. Plaintiff Paul Jones had a contract for 5000 minutes per month when defendant FJH was calling his telephone numbers without plaintiffs PJ & LS  prior express permission and the calls were not for emergency purposes

136.  Plaintiff PJ explained to defendant FJH representative on several occasions that he  only had 5000 minutes per month and  **(Exhibit 9** plaintiff telephone contract) that defendant FJH caused plaintiff bill to go over $499 per month on at least 11-15 occasions & all calls were without plaintiff prior express permission and were not for emergency purposes

137. Plaintiff PJ has attached defendants FJH Bates Records (Internal phone records) as **Exhibit 7** this is undeniable truth of all the calls and dates defendant FJH made to plaintiffs PJ & LS cell, business, home and relatives telephone numbers claims in this complaint.

138. Plaintiff PJ received calls from the defendant FJH trying to contact someone other than he, plaintiff informed the defendants representative that the person they are looking for does not have authorization to receive calls on the number dialed, and the numbers called by defendant FJH is a cell and or a wireless business account and plaintiff PJ has no business with defendant FJH, so therefore plaintiff PJ is charged for the call because there is no established business relationship with plaintiff PJ.

139. Defendant FJH refused to acknowledge or except plaintiff PJ statements or Cease & Desist letters and continued to call plaintiff cell and wireless business numbers causing plaintiff to be over billed each month.

140. On information and belief, when Defendant FJH made these calls, it used equipment that had the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator and/or a predictive dialer; with the *capacity* to dial such numbers.

141. Plaintiff PJ states that these calls were from a debt collection for plaintiff LS, Plaintiff LS states that she never gave consent to the original creditor to call any of the numbers at the time she signed the contract, the telephone numbers 914-573-6002,617-756-9682,617-799-8615,617-304-5185, 781-318-7-76 or 617-799-9237.

142. These numbers was assigned to the plaintiffs PJ & LS at least 2 years after the fact so there is no way defendant FJH could have thought at one time or another they had consent to call those numbers defendant FJH was well aware that they were breaking the law by receiving the Cease & desist letters by certified mail but not obeying the letters.

143. Plaintiff PJ immediately removed any thought of consent to call any of his telephone numbers from the defendant FJH because he told them verbally and through the US postal service by certified return

receipt defendant FJH acted knowingly & willingly to ignore plaintiffs Cease & Desist Letters and verbally not to call plaintiffs PJ & LS numbers.

144. Defendant FJH use a Skip Tracing device to get plaintiffs PJ & LS cell, home, business and wireless telephone numbers ( **781-436-5038, 781-318-7076 and 413-328-2070**) (**see Exhibit 7 pg 10**) on :

    02/11/12 at 10:03 am

    02/11/12 at 10:06 am

    02/11/12 at 10:09 am

145. Plaintiff PJ is suing defendant FJH for Ten calls to his telephone numbers **781-436-5038, 781-318-7076, 800-280-1488, 617-799-9237,** , Defendant FJH made these prohibited calls to Plaintiff PJ on these dates and times (**see Exhibit 7 pg 10 & 11**):

    12/29/11    9:08 pm

    01/04/12    12:05 pm

    01/05/12    10:10 am

    01/17/12    5:37 pm

    02/16/12    8: 39 am

    02/16/12    8: 40 am

    02/18/12    9:56 am

    02/22/12    1:44 pm

    02/24/12    11:24 am

    02/28/12    2:51 pm

146. Plaintiff LS is suing defendant FJH for eight calls to her telephone numbers *Cell 914-573-6002, Home 401-219-6912 , Cell 617-756-9682*, Defendant FJH made these prohibited calls to Plaintiff LS on these dates and times:

10/12/18   12:49 pm

02/01/11   03:27 pm

04/07/11   11:05 am

12/07/10    5:43 pm

12/18/10   12:47 pm

12/18/10   12:49 am

1/31/11    12:31 pm

1/31/11     1:56 pm

147. Defendant willfully and knowingly called the plaintiff regardless of defendant receiving a Cease &
Desist letter and regardless of defendant FJH representatives hearing both plaintiffs time and time
again tell them not call any of their wireless, cell, home, business and or relatives telephone numbers
on several occasions plaintiffs demands $1500 per each and every call were defendant has received a
Cease & desist letter from the plaintiffs PJ & LS.

148. Defendants FJH telephone system when used to call plaintiffs had the present capacity to call numbers
randomly and constituted as an ATDS at the time defendant made all calls to the plaintiff PJ & LS.

149. Defendant FJH acted recklessly when ignoring plaintiffs Cease & Desist letters by certified return
receipt and plaintiffs PJ & LS request the court to order Defendant FJH to pay $1500 per call it made
after receiving Cease & Desist letter or verbal warning not to call Plaintiffs PJ & LS telephone
numbers.

150. Plaintiffs PJ & LS specifically allege in this complaint that plaintiffs answered some of the phone calls
from the defendant FJH. Plaintiffs PJ & LS also claim under 47 U.S.C. § 227(b)(1)(A)(iii) that
defendant FJH has violated three elements:

(1) "to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party);"

(2) using any automatic telephone dialing system or an artificial or prerecorded voice;" and

(3) "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

151. One significant provision of the TCPA made it unlawful for any person to "initiate" a telephone call to any residential telephone line using an artificial or prerecorded voice, also known as a robo call, without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B). The statute created a private right of action for injunctive and monetary relief. A successful plaintiff can recover his "actual monetary loss" or $500, whichever is greater, for each violation, and the court can increase the award up to three times if it finds that the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

152. **The TCPA clearly states 47 U.S.C. §227(b)(1)(A)(iii) if anyone or company which states in part;**

(1) **PROHIBITIONS.—it shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**

(A) **to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;**

153. These calls were made with an automatic dialing system because when plaintiffs PJ & LS would answer the telephone there was no one there for about 2-5 seconds then either a live person would come on or a computerized voice mail.

154. Plaintiff PJ & LS received calls from defendant FJH from telephone numbers *7706121923, 7706128034, 7709889055, 7706129532, 7706128214 and 7706121744* which belong to the defendant FJH *and is used when call individuals to collect a debt.*

155. Defendant FJH would call plaintiffs PJ on 2 of his telephone line simultaneously or seconds apart, which would tie up plaintiff's PJ phone lines which is a violation of the TCPA, FDCPA and mgl 93a.

156. The plaintiff's telephone numbers *7813444352, 8002801488 8666001115,* has been listed on the do-not-call list for several years last being registered on or about February 15, 2008 (Exhibit 10) and plaintiffs number 413-328-2070 has been registered as of February 19, 2013.

157. Either the defendant FJH has no training for their representatives or defendant FJH have instructed their representatives too **knowingly and willingly violate the law**.

158. The call set forth in this complaint are so numerous and made with such frequency that they can have no other effect than to harass the plaintiffs PJ & LS, in violation of the MDCRA, MGL 93a and the TCPA.

159. From on or about January 2011 to December of 2013 Plaintiffs have mailed, Faxed no less than 10 separate and distinct demands to not to contact plaintiff PJ & LS by telephone (Exhibits 1-6) and also Cease & Desist letters.

160. The acts alleged herein all took place in Massachusetts in that the communication was received there.

161. The defendant FHJ has demonstrated willful or knowing non-compliance with 47 U.S.C 227(b)(1)(A) by using an automatic dialing system which has the capacity to dial phone numbers without human intervention to call the plaintiffs cell, wireless & home numbers no less than 15 times in this suit.

162. Plaintiff has already established that the defendants has no permission to call plaintiffs PJ & LS cell, wireless, business, home or relatives number through emails, faxes, Cease & Desist letters and verbally on the phone when defendants representatives called.

163. Even if defendants could have possibly thought it had consent: consent was withdrawn on or about December 11, 2010 when plaintiff PJ told defendants FJH representative that this is not (Lindsey Shepard) number and to remove all plaintiffs PJ numbers from their call log and not to call back (See Exhibit 7 pg 4) Defendants FJH own internal bates records states plaintiffs PJ made these statements to them but they refused to acknowledge plaintiffs demands to remove and not to call back.

164. Defendant FJH by their own admissions in there bates records (**Exhibit 7 pg 3**) attached  stated that they (Defendant FJH) pulled plaintiffs Lindsey Shepard credit report without a permissible purpose from Equifax & Trans Union on or about 12/08/2010.

165. Plaintiff demand $1000 for each credit pull that defendant FJH did on or about 12/10/2010.

166. Plaintiff is within a year statute of limitation to sue for violations of the FCRA and does so in this complaint.

167. Plaintiff has had no choice but to learn and read what congress intended when the created & amended the FCRA, consumer LS has read and learned the rules of the FCRA & doesn't not understand why defendant FJH or any debt collector can read (**FCRA § 604 – [15 U.S.C. § 1681b**) and come to a conclusion how defendant FJH a debt collector can think or assume that when the law states that *(a) In general. Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other: they are a consumer reporting agencies'.*

168. **15 U.S.C. § 1681b (a) (3) (A) pertains to the "Credit Reporting Agency" (Trans Union, Experian & Equifax) and not to the collector or furnisher of information.**

169. Plaintiff states for the record DEFENDANT FREDRICK J. HANNA IS NOT & NEVER HAS BEEN A CONSUMER REPORTING AGENCY, defendant Fredrick J. Hanna is a third party debt collector.

170. Defendant FJH, is a "debt collector" As part of its debt collection activities, defendant furnishes information to consumer reporting agencies. As such, defendant is subject to Section 623 of the FCRA, 15 U.S.C. || 1681s-2, which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency.

171. The FCRA was enacted in 1970 and became effective on April 25, 1971, and has been in force since that date. In 1996, the FCRA was amended extensively by Congress. Among other things, Congress added Section 623(a)(5) to the Act, which became effective on October 1, 1997.

172. Section 623(a)(5) of the FCRA requires anyone furnishing information to a consumer reporting agency regarding a delinquent account that has been placed for collection, charged to profit or loss, or subject to any similar action, to provide the consumer reporting agency, not later than 90 days after the furnishing of the information, the month and year of the commencement of the delinquency that immediately preceded the action.

173. In the course of their business, defendant FJH failed to comply with the requirements of Section 623(a)(5) in that, for a period of time, they reported dates of delinquency to credit reporting agencies, including delinquency dates, that were later then the month and year of the commencement of the delinquency.

174. The acts and practices in paragraph 6 constitute violations of Section 623(a)(5) of the FCRA, 15 U.S.C. || 1681s-2(a)(5). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. || 1681s(a)(1), the acts and practices alleged in Paragraph 5 also constitutes unfair or deceptive acts or practices in violation

of Section 5(a) of the FTC Act, 15 U.S.C. || 45(a) CIVIL PENALTIES A CIVIL PENALTIES AND

INJUNCTIVE RELEIF FOR VIOLAIONS OF THE FAIR CREDIT REPORTING ACT.

175. Defendant FJH have violated the FCRA as described above, with actual knowledge or knowledge

fairly implied on the basis of objective circumstances, as set forth in Section 621(a)(2) of the FCRA,

15 U.S.C. || 1681s(a)(2).

176. Section 621(a)(2) of the FCRA, 15 U.S.C. || 1681s(a)(2), authorizes the Court to award monetary

civil penalties of not more then $2,500 per violation of Section 623(a)(5).

177. Each instance in which defendant FJH reported a later date then actual delinquency date in violation

of Section 623(a)(5) of the FCRA, 15 U.S.C. || 1681s-2(a)(5) since October 1, 1997, the date that

Section 623(a)(5) went into effect, constitutes a separate violation of the FCRA for which plaintiff

seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. || 1681s.

178. Defendant FJH failed to provide a notice of dispute to the CRA (Trans Union & Equifax) when

plaintiff LS provided notice to the Defendant FJH that the alleged debt was disputed.

179. Defendant FJH failed to conduct a written investigation into the alleged account upon notification of

dispute.

180. Defendant FJH is in violation of the Fair Credit Reporting Act (FCRA) 15 U.S.C §1681b by initiating

credit report pulls with no permissible purpose from the credit bureaus therefore lowering the

Plaintiff's LS credit scores and thousands of unknowingly consumers in America. There was no

authorization by the Plaintiff LS for the Defendant FJH to pull her credit reports lowering her score

and violating her civil rights.

181. Plaintiff LS has never ever applied for a line of credit or insurance from the defendant FJH.

182. Defendant FJH is in the debt collecting business and is not in the business of granting credit or

insurance to consumers.

183. Plaintiff Lindsey Shepard has never promise to pay defendant FJH and has never had an account with them.

184. Defendant Fredrick J. Hanna is not  consumer credit reporting agency and has claimed that they are by stating in several federal & State lawsuits that they have a right to pull consumers credit reports under 1681b(a)(3)(A)

185.  15 U.S.C. § 1681b(a)(3)(A) pertains to the "Credit Reporting Agency" and not to the collector or furnisher of information. The language quite clearly outlines the responsibility of **the CRA (Trans Union, Experian & Equifax)** to determine that they are furnishing a credit report **to an entity or individual** who the CRA **(Trans Union, Experian & Equifax)** has "reason to believe" has a legitimate purpose. This is established by one of the smallest and seemingly insignificant words in the English language. **The word IT in number (3) indicates reference to the entity identified in (a), the consumer reporting agency (Trans Union, Experian & Equifax) and only to that entity.**

186.  This section only applies to the CRA **(Equifax, Trans Union & Experian)** and **its reason to believe** that the entity (Fredrick J. Hanna) they  (The CRA) are supplying with plaintiff LS (Credit Report) personal info has a legal and legitimate purpose for having it and that they can be trusted to use it for no other purpose. Obviously the debt collector (Fredrick J. Hanna) cannot rely on a section of the statute that clearly does not apply to them but thus far they have been getting away with it ever since the language was written in courts across America.

187. The defendant Fredrick J. Hanna have not certified to the CRA **(Trans Union, Experian & Equifax)** that they did indeed have a permissible purpose to pull plaintiff LS credit report , that there was indeed an "account" belonging to plaintiff LS  that they have somehow acquired the authority to collect on.

188. The law clearly defines the procedure for certification to the CRA,s (Equifax, Trans Union & Experian) **§ 1681e defines the procedures for certification. "These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a)**

189. Plaintiff shall propound discovery upon defendant FJH to get these documents that were given to Trans Union & Equifax on or about 12/ 08/ 10.

190. The FCRA clearly state the meaning of **account** and plaintiff does not have an account with the defendant FJH.

190. The FCRA TITLE 15 CHAPTER 41 SUBCHAPTER VI States § 1693a:

> Definitions

> As used in this subchapter—(2) the term **"account"** means a **demand deposit, savings deposit, or other asset account (other than** an occasional or incidental credit balance in an open end credit plan as defined in section **1602 (i)** of this title,), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement; **This seems to describe credit cards and home equity loans.**

191. The FCRA TITLE 15 > CHAPTER 41 > SUBCHAPTER I > Part A > § 1602: Definitions and rules of construction 15 U.S.C 1602(i) The terms "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan or open end consumer credit plan which is an open end credit plan or open end consumer credit plan within the meaning of the preceding sentence is an open end credit plan or open end consumer credit plan even if credit information is verified from time to time.

## COUNT 1

## MGL 93 UNFAIR & DECEPTIVE TRADE PRACTICES ACT

**BY DEFENDANTS ANTHONY, DOUG, CITY LINE AUTO SALES**

**& FREDRICK J.HANNA**

192. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

193. The plaintiffs are consumers within the meaning of MGL 93a.

194. The defendants are business within the meaning of mgl 93a

195. Defendant Fredrick J. Hanna violated the mgl 93a act. by not responding to plaintiffs mgl 93a demand letter and by calling plaintiffs telephone numbers after verbally and by mail being told not to call any of plaintiff telephone numbers and by promising that they would not call back but did.

196. Defendant Fredrick J. Hanna violated the mgl 93a act. by promising to remove plaintiff's numbers from their call log and not doing so.

197. Defendants DOUGE, ANTHONY & CITY LINE AUTO SALES violated the Massachusetts Unfair Trade Practices Act MGL 93a. by withholding information about the above mentioned vehicle Plaintiff relied on said miss representation.

198. Defendants DOUGE, ANTHONY & CITY LINE AUTO SALES refused to allow plaintiff to pay any amount to receive car back after defendants stated that it would take to receive car back which is unfair & deceptive act.

199. Defendant DOUGE, ANTHONY & CITY LINE AUTO SALES resold plaintiff car without informing them which a violation of mgl 93a is.

200. Plaintiff's PJ & LS demands treble & punitive damages from all defendants listed above for violations of the mgl 93a act.

201. Plaintiff's PJ & LS demands triple damages from all the defendants listed above for violations of the MGL 93a.

202. Defendant Fredrick J. Hanna violated the mgl 93a act. by using an Automatic dialing system and a predictive dialing system that has the capacity to store, dial number without human intervention.

203. Defendant Fredrick J. Hanna violated the mgl 93a act. by refusing to stop calling plaintiffs PJ & LS after they received Cease & desist letter and was told verbally.

WHEREFORE, Plaintiff prays that this honorable Court award plaintiffs triple damages from defendants Fredrick J. Hanna, DOUGE, ANTHONY & CITY LINE AUTO SALES for the claims set forth herein including litigation fees and costs, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to plaintiffs credit reports and any other and further relief which is just and proper under the circumstances.

## COUNT 2

### BREACH OF CONTRACT
### BY DEFENDANTS ANTHONY, DOUG & CITY LINE AUTO SALES

204. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

205. This claim is for breach of contract and additional violations of the Consumer Act by defendant Doug, Anthony & City Line Auto Sales, jointly and/or severally.

206. As a result of the above, inter alia, defendants Doug, Anthony & City Line Auto Sales breached its contract and warranties with Plaintiffs, and that was unfair and/or deceptive to Plaintiffs

207. On or about January 29, 2008, Plaintiffs and Defendants Doug & Anthony & City line Auto Sales Dealer entered into a verbal contract under which Defendants agreed to sell the 2006 Mercedes CLK with the parts (2 Computers) and defendants violated it by withholding the truth about the vehicles condition.

208. Plaintiff, in reliance on the aforesaid verbal contract, paid Defendant Doug & Anthony & City line
     Auto    Sales Dealer the sum of Fourteen Thousand ($14,000.00) Dollars on the motor Vehicle.

209. Plaintiff has otherwise complied with all of the prerequisites to enforcement of the aforesaid contract.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally,   as follows: Money
damages of $14,900, Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees;
Equitable relief, including but not limited to, rescission of the aforesaid contract; Such other and further
relief as this Court deems just.

## COUNT 3
### UNJUST ENRICHMENT
### BY DEFENDANTS ANTHONY, DOUG & CITY LINE AUTO SALES

210. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten
     herein.

211. As a result of the conduct described above, Defendants Doug, Anthony & City Line Auto Sales have
     been unjustly enriched at the expense of the plaintiffs.

212. Defendants Doug, Anthony & City Line Auto Sales should be required to disgorge all monies, profits
     and gains which they have gained obtain at the expense of the plaintiffs and a constructive trust should
     be imposed thereon for the benefits of the plaintiffs.

**Wherefore**, plaintiff demands judgment against the defendants (Doug, Anthony & City Line Auto Sales),
jointly and severally as follows:

**A.** For Compensatory damages in the amount of $14,600 plus interest

**B.** For punitive damages in the amount of $500,000 plus interest.

**C.** For treble, attorney's fees, Plaintiff cost to bring this action in the amount of $500,000.

**D.** For injunctive relief as the court deems appropriate, including a preliminary injunction restraining the defendants (Doug, Anthony & City Line) from dissipating the proceeds from the sale of the motor vehicle pending a final determination of this case and any other relief the court deems appropriate.

## COUNT 4

## COMMON LAW FRAUD

## BY DEFENDANTS ANTHONY, DOUG & CITY LINE AUTO SALES

213. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

214. Defendants Doug & Anthony knew at the time that they made the false representation and concealed the material facts alleged above that such representations were untrue and that defendants were concealing material facts from the plaintiff.

215. Defendants Doug & Anthony acted with the intention to deceive and mislead plaintiff, to fraudulently induce plaintiff to purchase the above mentioned motor vehicle when defendants Anthony & Doug knew the engine was ceased.

216. Plaintiffs acted in reliance to defendants false representation and material omissions, and were there by induced to purchase the above mentioned motor.

217. As a direct and approximate result thereof, plaintiff was damaged.

218. As a result of their conduct plaintiff Paul Jones & Lindsey Shepard were damaged.

219. As a result of their conduct, defendants Doug, Anthony & City Line Auto Sales are liable to plaintiffs for punitive damages.

**Wherefore**, plaintiff demands judgment against the defendants Anthony, Doug and City Line Auto Sales,

jointly and severally for Compensatory, punitive treble, attorney's fees, Plaintiff cost to bring this action

and any other relief the court deems appropriate.

## COUNT 5

### DEFENDANT'S VIOLATIONS OF THE TELEPHONE COMMUNICATIONS ACT 47 U.S.C. §227(b)(1)(A) (iii) BY DEFENDANT FREDRICK

220. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten

herein.

221. Defendant Fredrick has demonstrated willful or knowing non-compliance with 47 U.S.C.

§227(b)(1)(A) **(iii)** by using an automatic telephone dialing system to call Plaintiff's PJ & LS Wireless

& Cell phone.

222. Defendant Fredrick has demonstrated willful or knowing non-compliance with 47 U.S.C.

§227(b)(1)(A) **(iii)** by refusing to stop calling after receiving notices of Cease & Desist letter from

both plaintiffs PJ & LS.

223. Defendant Fredrick has demonstrated willful or knowing non-compliance with 47 U.S.C.

§227(b)(1)(A)(iii) by calling the Plaintiff's PJ & LS phone number, which is assigned to a cellular

telephone service contrary 47 U.S.C. **§227(b)(1)(A)(iii)** which states in part;

(1) PROHIBITIONS.—it shall be unlawful for any person within the United States, or any person
outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express
consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded
voice—

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

**WHEREFORE**, Plaintiff prays that this honorable Court award plaintiffs Actual, statutory and punitive damages from defendants Fredrick J. Hanna, for the claims set forth herein and any other and further relief which is just and proper under the circumstances.

## COUNT 6
### DEFENDANT'S VIOLATIONS OF THE TELEPHONE COMMUNICATIONS ACT 47 U.S.C. §227(b)(2)(5) BY DEFENDANT FREDRICK

224. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

225. Defendant Fredrick has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(2)(5) by calling the Plaintiff's PJ & LS phone number, more than once during a 12 month period after they received a Cease & Desist letter by certified return receipt.

226. Defendant Fredrick called the Plaintiffs cellular & wireless telephone phone, contrary to 47 U.S.C. §227(b(2)(5).

**WHEREFORE**, Plaintiffs PJ & LS prays that this honorable Court award both plaintiffs Actual, Statutory and Punitive damages from defendants Fredrick J. Hanna, for the claims set forth herein and any other and further relief which are just and proper under the circumstances.

## COUNT 7

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §227(b)(3)(B) BY DEFENDANT FREDRICK J. HANNA

227. Plaintiffs  incorporates by reference all paragraphs of this Complaint as though fully stated herein.

228. On information and belief, Defendant used an automatic telephone dialing system as defined by 47 USC § 227 (a)(1) when it made each and every call to Plaintiffs number assigned to a cellular, wireless telephone.

229. On information and belief, Defendant FJH did not have Plaintiff's prior express permission prior to contact Plaintiff at his wireless number using an automatic telephone dialing system.

230. Defendant FJH made the calls to Plaintiffs PJ & LS willfully.

231. Defendant FJH made the calls to Plaintiff s PJ & LS knowingly.

232. Defendant's FJH acts in making the calls to Plaintiff s PJ & LS were not accidental.

233. Plaintiff's PJ & LS privacy has been invaded as a result of Defendant's FJH acts.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant FJH for $1500 per call for the claims set forth herein and any other and further relief which is just and proper under the circumstances.

**COUNT 8**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §227(b)(3)(B)**

235. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

236. Plaintiff violated the TCPA knowingly and willingly when defendant made calls to plaintiffs PJ & LS for the calls listed in this complaint.

**Wherefore** plaintiff request damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of at least $500 for each such act that this Court finds were not made willfully or not made knowingly; damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of $1,500 for each such act that this Court finds were made willfully or were made knowingly; and such other relief as the Court may deem just and proper.

## COUNT 9
**VIOLATION OF Massachusetts Debt Collection Regulation Act 940 CMR §7.04**

### BY DEFENDANT FREDRICK

237. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

238. Plaintiff is a consumer within the meaning of **940 CMR 7.04**.

239. Defendant Fredrick is a debt collector within the meaning of **940 CMR 7.04**.

240. Defendant Fredrick violated MDCRA **940 CMR 7.00-7.07**.

A. by claim, attempt, or threatening to enforce a debt when such a person knows that the debt in not legitimate or Asserts the existence of some other legal right when such person knows that the right does not exist.

B. (d) Communicating by telephone without disclosure of the name of the business or company of the creditor and without disclosure of the first and last name of the individual making such communication or a first name and a personal identifier for such individual such as a code or alias, provided however, that any such individual utilizing a personal identifier shall use only one such personal identifier at all times and provided that a mechanism is established by the creditor to identify the person using such personal identifier;

C. (e) Causing expense to any debtor in the form of long distance or collect telephone calls, text messaging, download fees, data usage fees, or other similar charges, except the creditor may place non-collect telephone calls to the debtor's place of residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number, subject to the limitations set forth in Section 7.04(1)(f);

D. (f) Initiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number and two such communications in each 30-day period other than at a debtor's residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number, for each debt, provided that for purposes of this section, a creditor may treat any billing address of the debtor as his place of residence, and provided further, that a creditor shall not be deemed to have initiated a communication with a debtor if the communication by the creditor is in response to a request made by the debtor for said communication;

E. (h) Placing any telephone calls to the debtor's place of employment if the debtor has made a written or oral request that such telephone calls not be made at the place of employment, provided, that any oral request shall be valid for only ten days unless the debtor provides written confirmation postmarked or

delivered within seven days of such request. A debtor may at any time terminate such a request by written communication to the creditor;

F. (i) Failing to send the debtor the following notice in writing within 30 days after the first communication to a debtor at his place of employment regarding any debt, provided that a copy of the notice shall be sent every six months thereafter so long as collection activity by the creditor on the debt continues and the debtor has not made a written request as described in 940 CMR 7.04(1)(h):

241. Defendant Fredrick violated 7.05: Contact With Persons Residing in the Household of a Debtor:

A. (1) A creditor may assume that all contacts directed to the debtor's household are received either by the debtor or persons residing in the household of the debtor unless the creditor knows or should know information to the contrary.

(2) It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor.

(3) It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten to contact persons who reside in the household of a debtor, other than the debtor, in any of the following ways:

(a) Using profane or obscene language;

(b) Placing telephone calls, disclosing the name of the business, or company of the creditor, unless the recipient expressly requests disclosure of the business or company name;

(c) Causing expense to any such person in the form of collect or long distance telephone calls, text messaging, download fees, data usage fees or other similar charges;

(d) Engaging any such person in non-identifying communication via telephone with such frequency as to be unreasonable or to constitute harassment to such person under the circumstances, and engaging any person in communications via telephone, initiated by the creditor, in excess of two calls in each seven-day period at a debtor's residence and two calls in each 30-day period other than at a debtor's residence, for each debt;

242. Defendant Fredrick violated 7.06: **Contact with Other Persons Regarding a Debt by means of:**

**A.** (1) It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten to contact persons in connection with a debt in any of the following ways:

(c) Causing expense to any person in the form of collect or long distance telephone calls, text messaging, download fees, data usage fees or other similar charges.

(11) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false including, without limitation, the failure to communicate that a disputed debt is disputed.

(16) The collection of any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(23) Requesting any information about the debtor or the debtor's accounts or assets other than information the creditor, in good faith, believes will assist in the collection of the debt owed to the creditor.

243. Defendant Fredrick J. Hanna violated **MDCRA 940 CMR 7.08: Validation of Debts**

(1) It shall constitute an unfair or deceptive act or practice for a creditor to fail to provide to a debtor or an attorney for a debtor the following, within five business days after the initial communication with a debtor in connection with the collection of a debt, unless the following information is contained in the initial communication or the debtor has paid the debt:

(a) The amount of the debt;

(b) The name of the creditor to whom the debt is owed;

(2) If the debtor, or any attorney for the debtor, notifies the creditor in writing within the 30-day period described in subsection (1) of this section, that the debt, or any portion thereof, is disputed, the creditor shall cease collection of the debt, or any disputed portion thereof, until the creditor verifies the debt and provides the debtor, or any attorney of the debtor, by first class mail, the following materials:

(a) All documents, including electronic records or images, which bear the signature of the debtor and which concern the debt being collected;

(b) A ledger, account card, account statement copy, or similar record, whether paper or electronic, which reflects the date and amount of payments, credits, balances, and charges concerning the debt, including but not limited to interest, fees, charges or expenses incidental to the principal obligation which the creditor is expressly authorized to collect by the agreement creating the debt or permitted to collect by law;

(c) The name and address of the original creditor, if different from the collecting creditor; and

**WHEREFORE**, based on facts set forth in the above counts, Plaintiff demands

(a) statutory damages for each and every phone call placed by Defendant Fredrick to plaintiff cell , home & or wireless numbers.

(b) statutory damages for each and every phone call placed by Defendant Fredrick to plaintiff cell , home & or wireless numbers.

(c) fees and costs to bring this complaint.

(d) such other relief as may be just.

## COUNT 10

## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681

## WILLFUL NON-COMPLIANCE BY DEFENDANT FREDRICK J.HANNA

244. Plaintiff (Lindsey Shepard) LS is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c)

245. Defendant (Fredrick J. Hanna) FJH is a furnisher of information within the meaning of the FCRA, 15 U.S.C. §1681s-2.

246. Defendant (Fredrick J. Hanna) FJH willfully violated the FCRA. Defendant's FJH violations include, but are not limited to, the following:

(a) Defendant FJH willfully violated 15 U.S.C. §1681b(f) by obtaining  Plaintiff's  LS consumer report without a permissible purpose as defined by15 U.S.C. §1681b.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $1,000 per each credit pull against Defendant (Fredrick J. Hanna) FJH for actual or statutory damages, and punitive   damages, attorney's fees and costs, pursuant to 15 U.S.C. §1681n.

## COUNT II

## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681

## NEGLIGENT NON-COMPLIANCE BY DEFENDANT DEBT COLLECTOR, L.L.C.

247. Plaintiff (Lindsey Shepard) LS is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c).

248. Defendant (Fredrick J. Hanna) FJH is a furnisher of information within the meaning of the FCRA, 15
U.S.C. §1681s-2.

249. Defendant (Fredrick J. Hanna) FJH negligently violated the FCRA. Defendant's   violations include,
but are not limited to, the following:

(a) Defendant (Fredrick J. Hanna) FJH negligently violated 15 U.S.C. §1681b(f)

by obtaining Plaintiff's consumer report without a permissible purpose as defined by 15 U.S.C. §1681b.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $1,000   for each credit pull,
against Defendant (Fredrick J. Hanna) FJH for actual damages, and attorney's fees and costs, pursuant to
15 U.S.C. § 1681o.

## COUNT 12

## VIOLATIONS OF SECTION 621(a)(2) of the FCRA,

## 15 U.S.C.1681s (a)(2)BY DEFENDANT FREDRICK J.HANNA

250. Plaintiff (Lindsey Shepard) LS is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c).

251. Defendant (Fredrick J. Hanna) FJH is a furnisher of information within the meaning of the FCRA, 15
U.S.C. §1681s-2.

252. Defendant FJH have violated the FCRA as described above, with actual knowledge or knowledge
fairly implied on the basis of objective circumstances, as set forth in Section 621(a)(2) of the FCRA, 15
U.S.C. ‖ 1681s(a)(2).

210. Section 621(a)(2) of the FCRA, 15 U.S.C. || 1681s(a)(2), authorizes the Court to award monetary civil penalties of not more than $2,500 per violation of Section 623(a)(5).

211. Each instance in which defendants reported a later date then actual delinquency date in violation of Section 623(a)(5) of the FCRA, 15 U.S.C. || 1681s-2(a)(5) since October 1, 1997, the date that Section 623(a)(5) went into effect, constitutes a separate violation of the FCRA for which plaintiff seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. || 1681s.

253. Defendant (Fredrick J. Hanna) FJH violated **15 U.S.C.1681s (a)(2)** the FCRA. Defendant's violations include, but are not limited to, the following:

a. Section 623(a)(5) of the FCRA requires anyone furnishing information to a consumer reporting agency regarding a delinquent account that has been placed for collection, charged to profit or loss, or subject to any similar action, to provide the consumer reporting agency, not later than 90 days after the furnishing of the information, the month and year of the commencement of the delinquency that immediately preceded the action.

B. In the course of their business, defendant FJH failed to comply with the requirements of Section 623(a)(5) in that, for a period of time, they reported dates of delinquency to credit reporting agencies, including delinquency dates, that were later then the month and year of the commencement of the delinquency.

C. The acts and practices in this complaint constitute violations of Section 623(a)(5) of the FCRA, 15 U.S.C. || 1681s-2(a)(5). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. || 1681s(a)(1), the acts and practices alleged in this complaint above also constitutes unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. || 45(a)

WHEREFORE, plaintiff respectfully requests that the Court, pursuant to this courts own powers, judgment

against defendant FJH and in favor of plaintiff LS for $2500 each FCRA violation alleged in this

complaint, award plaintiff monetary civil penalties for each violation of the FCRA as alleged in this

complaint & grant plaintiff such additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

June 9, 2014

Respectfully Submitted

Paul Jones
572 Park Street
Stoughton, Ma 02072
Pj22765@gmail.com
888-655-3002

Lindsey Shepard
Lindseyshepard2@gmail.com
Braintree, Ma

Andrew M. Schneiderman

Hinshaw & Culbertson LLP

28 State Street, 24th Floor

Boston, Ma 02109

Tel: 617-213-7000

Email: aschneiderman@hinshawlaw.com